# CHARLESTON

SOUTHERN *et al.* v. SOUTH PENN OIL CO. *et al.*

Submitted March 4, 1914.    Decided April 28, 1914.

ALTERATION OF INSTRUMENTS—*Oil and Gas Lease—Sufficiency of Evidence.*

A case involving the application of well settled principles, in which the evidence is held to be sufficient to prove a fraudulent alteration in the material terms of an oil and gas lease.

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Harrison County.

Bill by George W. Southern and others against the South Penn Oil Company and others. From decree for plaintiffs, defendants appeal.

*Affirmed.*

*A. B. Fleming, Charles Powell, Kemble White* and *Edward A. Brannon,* for appellants.

*Davis, Swartz & Templeman,* for appellees.

WILLIAMS, JUDGE:

George W. Southern and Phoebe J. his wife, on the 12th of June, 1905, executed to the Hope Natural Gas Company three several oil and gas leases for the term of five years, and as long thereafter as oil or gas is produced, on three several tracts of land containing 28 acres, 134 acres and 100 acres, respectively. The lessee covenanted to drill a well in three

months or pay a stipulated quarterly rental in advance. About the 12th of June, 1910, the lessee entered upon the 134 acre tract preparatory to drilling a well. Mr. Southern, claiming that the leases expired on the 12th of June, 1910, caused written notices to be served on its agents to get off the land. They refused to heed the notice, insisting that the lease did not expire until the 25th December, 1910, and that they were within their company's rights. Thereupon Southern and wife brought a suit against the Hope Natural Gas Company and the South Penn Oil Company, assignee of the oil rights under said leases, and were granted a temporary injunction in vacation on the 18th June, 1910. The injunction suspended drilling operations until after the 25th December, 1910, the time when, as said companies contend, the leases did expire, and they then brought two suits in equity against said Southern and others, for the purpose of obtaining relief against forfeiture of the leases on account of the enforced suspension of their operations. Answers were filed in all the suits, and they were consolidated and finally heard together on the 3rd of January, 1912, on pleadings and depositions, and a decree was rendered holding that George W. Southern and wife were entitled to the relief prayed for in their bill and perpetuating the injunction, and denying relief to the aforesaid companies and dismissing their bills. From that decree they have appealed. The record is voluminous, but it presents a single question, that is, whether the proof sustains the allegation in the bill filed by Southern and wife charging that a material alteration had been fraudulently made in the aforesaid leases after they were executed, changing the time at which they were to expire if no well was drilled in the meantime. It is admitted that they were executed on June 12, 1905, on printed forms provided by J. N. Wilkinson, agent of the Hope Natural Gas Company. The parties met in Mr. Southern's office, at his nursery farm. Mr. Southern and his two sons, J. N. Wilkinson, J. J. Wilkinson and Homer Bartlett, the three last named representing the defendant companies, were all present. The forms on which the leases were executed contained the following clause: "It is agreed that this lease shall remain in force for the term of ten years from this date." It also admitted that the word *ten* was

erased and the figure *5* written in its place, before the leases were executed. Southern contends that the words, "this date," were not changed, and that the leases were to run for five years from the 12th of June, 1905. He avers that, shortly before he brought his suit, his attention was called to the leases on record, and that they called to run for five years from the "25th of December, 1905," and charges that the words, "this date," had been erased and the words and figures "25th of December, 1905," fraudulently inserted in their place, after the lease had been delivered to the company's agents. This allegation is denied both by answer and testimony of witnesses. The decision of that controverted fact determines the case. Mr. Southern and his two sons swear positively that the change was not made when the leases were executed. On the other hand, Mr. Bartlett and the two Wilkinsons are equally positive in their testimony that the changes were made before they were executed. There are, however, uncontradicted facts and circumstances in the case which give a decided preponderance to the scale of evidence in favor of Southern's contention. At the time the leases were prepared Mr. Southern requested copies of them, and they were then prepared on like printed forms as the originals and left with him. These he preserved. Two of the copies were made out by J. J. Wilkinson and the other by Homer Bartlett. They are all signed by J. J. Wilkinson, one designated by him as "a copy," and the other two, "a true copy." The copies all contain the printed words, "this date," instead of the written words "25th of December, 1905." J. J. says he signed them all without reading them over, and adds: "I knew it wasn't a true copy when I signed it. I knew it was merely fixed up to show when the rental came due." The Southerns all say the copies were carefully compared with the originals before the originals were signed, and the words, "25th of December, 1905," did not appear. In all the copies numerous other changes and insertions were made with a pen to make them correspond with the originals. The word *ten* was erased and the figure *5* inserted. Each copy contains a free gas clause, written with a pen and differently worded in each copy, but corresponding with the same clause in its original, except that, in the recorded copies, said clause closes

with the words, "subject to the rules and regulations of said gas company at such time," which are not in the copies. There were numerous other blanks in the printed forms, necessary to be filled in with pen and ink to make the copy like its original, such as the date of the lease, the names of the lessors and the place of their residence, letters were added to pluralize words, boundaries of the tract and the number of acres it contained were written in. Each copy seems to correspond in every respect with its original except as above noted, and except also in the very important particular, that where the words, "this date," appear in the copies, the recorded leases have the words, "25th of December, 1905." All changes and additions in two copies were admittedly made by J. J. Wilkinson and in the other by Homer Bartlett. The copy of the lease of the 100 acre tract, prepared by J. J. Wilkinson, was shown to him when his deposition was taken, and he was asked to point out the parts that he had written into it and answered as follows: " '12th,' 'June,' '5,' 'G. W. Southern and Phoebe J. Southern, his wife,' 'Shinnston, W. Va.' 'Harrison,' 'West Va.' 'ies,' 'ies,' 'them,' 've,' and there is a little mark I don't believe is the same kind of ink or my handwriting after the word 'do,' the letters 'es,' I don't know whether it is 'es,' or 'u,' 'Clay,' Harrison,' 'West Va.' 'Shinns Run,' 'Rebecca Radabaugh and J. Thompson,' 'Okey Radabaugh and David Slocum,' 'W. M. Sees and others,' 'Sam'l Southern and others,' 'one hundred (100),' 'three hundred,' '5,' 'ies,' 'their,' '⅛,' '75,' 'three months,' 'twenty-five,' 'their,' the Farmers Bank of Clarksburg, W. Va.' 'first parties are to have the gas free for domestic purposes from any gas well drilled on said premises by making their own connectings gas therefrom,' 'one,' 'ies,' 'ies,' 'their,' 'A true copy J. J. Wilkinson.' " He likewise answers a similar question respecting the copy of the lease for the 134 acres; and so does Bartlett, in relation to the insertions of letters, figures and words made by him in the copy of the lease for the 28 acre tract. Now, is it not passing strange that the copyist would take all the pains necessary to make the copy correspond with the original in so many minor matters, many of which are wholly immaterial, just for the purpose, as he says, of furnishing the

lessor with a memorandum of the time when his rentals would be payable, and yet fail to insert so vital a matter as the date of its ending? And is it not also strange that Homer Bartlett should make one copy and J. J. Wilkinson the other two, and both make the same vital mistake and no other? Such a co-incidence is not impossible, we admit. It might have happened by accident, but the probability of its occurrence in that way is so remote as to make it almost miraculous. We do not see how anyone but the witnesses who testified to the fact could believe it. The improbability of such a co-incidence happening purely by accident clearly convinces us that the alleged alterations were made in the original leases after they were executed. By whom they were made is not material. Even if the evidence were so evenly balanced as simply to produce a doubt in our minds as to the correctness of the chancellor's finding on the conflicting testimony, we would not feel warranted in reversing the decree, in view of previous rulings of this court giving weight to the chancellor's finding in such cases. But in this case we entertain no doubt as to the correctness of his finding.

That the South Penn Oil Company held leases from Southern and wife on the same lands, which did not expire until 25th December, 1905, and the agents who procured the second leases understood them to be renewals of the first for an additional period of five years, does not overcome the evidence, amounting almost to absolute proof of the subsequent alteration. The decree is affirmed.

*Affirmed.*